UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JONATHAN JUDKINS, | ) | |
| | ) | |
| Petitioner, | ) | 12 C 4111 |
| | ) | |
| vs. | ) | Judge Feinerman |
| | ) | |
| MARCUS HARDY, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

**<u>Memorandum Opinion and Order</u>**

Petitioner Jonathan Judkins, a state inmate serving two consecutive life sentences, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Doc. 1. The petition challenges convictions entered in two separate criminal cases, *People v. Judkins*, 92 CR 4451 (Cir. Ct. Cook Cnty., Ill.) ("Case No. 4451"), and *People v. Judkins*, 92 CR 4453 (Cir. Ct. Cook Cnty., Ill.) ("Case No. 4453"), that arose from the same traffic stop and arrest. Judkins was convicted in Case No. 4451 of the first degree murder of Ronnie Mays, and in Case No. 4453 of armed robbery, aggravated kidnaping, and the first degree murder of James Lamont Ford. Judkins seeks habeas relief on two grounds: (1) his counsel on direct appeal was ineffective for failing to appeal the denial of his motion to quash his arrest and suppress evidence; and (2) his detention and arrest violated the Fourth Amendment and the fruits of that arrest should have been suppressed. The habeas petition is denied, and a certificate of appealability is denied as well.

**Background**

A federal habeas court presumes correct the factual findings made by the last state court to adjudicate the case on the merits, unless those findings are rebutted by clear and convincing

evidence. *See* 28 U.S.C. § 2254(e)(1); *Coleman v. Hardy*, 690 F.3d 811, 815 (7th Cir. 2012) ("We give great deference to state court factual findings. After AEDPA, we are required to presume a state court's account of the facts correct, and the petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence.") (internal quotation marks omitted); *Rever v. Acevedo,* 590 F.3d 533, 537 (7th Cir. 2010); *Ward v. Sternes,* 334 F.3d 696, 704 (7th Cir. 2003). The Appellate Court of Illinois is the last state court to have adjudicated Judkins's criminal cases on the merits. *See People v. Judkins*, No. 1-07-3453 (Ill. App. Mar. 28, 2011) (Doc. 21-23 at 129-139); *People v. Judkins*, No. 1-98-412 (Ill. App. Jan. 21, 2000) (Doc. 21-23 at 1-2); *People v. Judkins*, No. 1-97-1384 (Ill. App. Oct. 17, 1997) (Doc. 21-10 at 42-43); *People v. Judkins*, No. 1-94-3868 (Ill. App. July 26, 1996) (Doc. 21-10 at 34-41). The appellate court's findings have not been shown by clear and convincing evidence to be incorrect. The following sets forth the facts as found by the state appellate court as well as the history of Judkins's criminal proceedings.

**A.    Case No. 4453**

On January 11, 1992, Judkins and Eric Taylor drove in a brown car to where James Ford, the murder victim, was speaking with Kimberly Thigpen about the new gym shoes that Ford was wearing. Doc. 21-10 at 36. Taylor jumped out of the car, stood directly in front of Thigpen, and pulled a shotgun out of his coat. *Ibid*. Judkins urged Taylor to hurry, and Taylor walked over to Ford, said, "Man, I have to talk about something," and then told him to "come on." *Ibid*. Taylor led Ford to the car, pushed him into the back seat, and then entered the car himself, after which Judkins drove the car away. *Ibid*. Several individuals reported seeing Judkins and Taylor in the vicinity that evening. *Id*. at 34-36.

Fred Jackson, who lived a few miles away, heard a shotgun discharge later that day. *Id*. at 37. Jackson looked outside and saw a car and someone picking something off the ground and throwing it into the car before getting in the car and driving away. *Ibid*. Jackson then went outside and saw a naked body, later identified as Ford's. *Ibid*. The medical examiner concluded that Ford had died of a gunshot wound to the head. *Ibid*. A wadding from a shotgun shell was found near the body. *Ibid*.

Nearly three weeks later, on January 29, 1992, Judkins and Taylor were arrested. *Ibid*. Judkins was wearing Ford's gym shoes and jacket. *Ibid*. The police recovered from a car near the arrest scene a shotgun with blood on the barrel. *Ibid*. Taylor later admitted the gun was his. *Ibid*. A firearms expert testified that the pellets recovered from Ford's head could have been fired from that gun. *Ibid*.

Judkins moved to quash his arrest and to suppress the evidence obtained as a result of the arrest, and the trial court denied that motion, Doc. 21-10 at 3-5; Doc. 21-12 at 2-62; the motion is discussed separately below. On August 9, 1994, the jury found Judkins guilty of the first degree murder of Ford, armed robbery, and aggravated kidnaping. Doc. 21-8 at 90-93. Judkins was sentenced to life in prison for the murder, thirty years for the armed robbery, and fifteen years for the kidnaping, with the armed robbery and kidnaping sentences running concurrently to each other but consecutively to the murder sentence. *Id*. at 114.

Judkins appealed his convictions and sentences, but his appellate counsel did not challenge the trial court's denial of his motion to suppress. Doc. 21-10 at 12-17. The Appellate Court of Illinois affirmed the trial court's judgment. *People v. Judkins*, No. 1-94-3868 (Ill. App.

July 26, 1996) (Doc. 20-10 at 34-41). Judkins did not file a petition for leave to appeal ("PLA")

with the Supreme Court of Illinois. Doc. 1 at 2.

On January 23, 1997, Judkins filed a post-conviction petition in the state trial court. Doc.

21-10 at 50. The trial court dismissed the petition and, on October 17, 1997, the Appellate Court

of Illinois affirmed the dismissal. *People v. Judkins*, No. 1-97-1384 (Ill. App. Oct. 17, 1997)

(Doc. 20-10 at 42-43). Judkins did not file a PLA with the Supreme Court of Illinois.

On September 24, 2003, Judkins filed a successive post-conviction petition. Doc. 21-10

at 52. The petition argued, among other things, that Judkins's counsel on direct appeal was

ineffective for failing to challenge the trial court's denial of Judkins's motion to suppress. Doc.

21-9 at 99-118. That petition was consolidated with a post-conviction petition Judkins had filed

in Case No. 4451. Doc. 21-23 at 129-31. The state trial court dismissed the petitions in both

cases. *Id*. at 132. On March 28, 2011, the Appellate Court of Illinois affirmed the dismissal.

*People v. Judkins*, No. 1-07-3453 (Ill. App. Mar. 28, 2011) (Doc. 21-23 at 129-139). Judkins

filed a PLA, which the Supreme Court of Illinois denied on September 28, 2011. *People v.*

*Judkins*, 955 N.E.2d 476 (Ill. 2011). The United States Supreme Court denied certiorari on

March 26, 2012. *Judkins v. Illinois*, 132 S. Ct. 1798 (2012).

**B.     Facts and Procedural History for Case No. 4451**

The Appellate Court of Illinois summarized the facts underlying this conviction as

follows:

> Less than three weeks after the fatal shooting of Ford [in Case No.
> 4453], defendant was involved in another murder. In [Case No. 4451],
> defendant, in 1997, was tried jointly with codefendant Taylor for the
> January 29, 1992 fatal shooting of Ronnie Mays. The State's evidence
> established that defendant and Taylor accosted the victim while he was in

-4-

> the front passenger seat of a car parked in an alley. Defendant and Taylor
> displayed shotguns. The driver of the car fled while defendant and Taylor
> fired gunshots into the car. Defendant, Taylor, and a third man then left the
> alley in a Buick. Shortly thereafter, Taylor returned on foot and drove the
> car containing Mays's body to another location. About one hour later,
> defendant, Taylor, and a third man were arrested after a traffic stop.
> Defendant was later identified as one of the offenders during police lineups.

Doc. 21-23 at 131. Judkins filed a pretrial motion to quash his arrest (the same arrest at issue in

Case No. 4453) and to suppress the evidence obtained as a result of the arrest, and the trial court

denied the motion. Doc. 21-12 at 62 (noting that the motion was denied as to Case No. 4453 and

Case No. 4451). On October 21, 1997, a jury found Judkins guilty of the first degree murder of

Mays. Doc. 21-18 at 140. Judkins was sentenced to life imprisonment, with that sentence to run

consecutively to the sentences imposed in Case No. 4453. Doc. 21-21 at 165.

Judkins appealed his conviction and sentence, but as in Case No. 4453, his appellate

counsel did not challenge the trial court's denial of his motion to suppress. Doc. 21-22 at 8-25.

The Appellate Court of Illinois affirmed on January 21, 2000. *People v. Judkins*, No. 1-98-412

(Ill. App. Jan. 21, 2000) (Doc. 21-23 at 1-2). Judkins did not file a PLA with the Supreme Court

of Illinois. Doc. 1 at 2.

On July 21, 2000, Judkins filed a post-conviction petition with the state trial court. Doc.

21-23 at 14. The petition argued, among other things, that Judkins's counsel on direct appeal

was ineffective for failing to challenge the trial court's denial of Judkins's motion to suppress.

Doc. 21-9 at 22-52. As noted above, that petition was consolidated with Judkins's successive

post-conviction petition in Case No. 4453; the circuit court dismissed the petitions in both cases;

the state appellate court affirmed on March 28, 2011; the state supreme court denied Judkins's

PLA on September 28, 2011; and the United States Supreme Court denied certiorari on March 26, 2012.

### C.    Motion to Suppress

As noted above, Judkins's trial counsel moved in both cases to quash his arrest and to suppress the evidence obtained as a result of the arrest. Doc. 21-8 at 50-52. Officer Marovich, the arresting officer, was the only witness to testify at the suppression hearing. Doc. 21-12 at 2-47. Marovich testified that he was on duty the night of January 29, 1992, when he received a radio call reporting a possible auto theft in progress and suspicious persons. *Id*. at 15-16. Marovich had been called to the area before and knew that it had a high incidence of auto thefts and burglaries. *Id*. at 17. When he arrived on the scene, Marovich saw a blue Camaro and a maroon Buick. *Id*. at 18. Judkins and Taylor were in the Camaro. *Ibid*. As Marovich approached, he was stopped by an individual who told him that the "occupants of the two vehicles had been in and out of the cars, walking around the parking lot area of the apartment buildings, looking in cars." *Id*. at 18-19. Marovich saw Judkins and Taylor exit the Camaro and speak to some individuals inside the Buick. *Id*. at 19. Judkins and Taylor then returned to the Camaro and drove away. *Id*. at 19-21. Marovich followed the Camaro and effected a traffic stop after five or six blocks. *Id*. at 21. Marovich asked Taylor, the driver, for his license and proof of insurance, which Taylor was unable to produce. *Id*. at 21-22. Marovich then arrested Taylor for a traffic violation. *Id*. at 39.

While the Camaro was pulled over, Marovich heard a radio transmission that other officers had approached the Buick and that a foot chase had ensued when an occupant fled. *Id*. at 22. Marovich also was informed that the Buick has been reported stolen from Harvey, and that a

-6-

shotgun had been found in the back seat.  *Id*. at 23.  In speaking with Judkins, Marovich learned that he was from Harvey.  *Id*. at 23-24.  Marovich then was approached by Officer Cooper from the Robbins Police Department.  *Id*. at 24.  Cooper informed Marovich that the people in the Camaro matched the description of suspects in a homicide shooting that had taken place in Harvey about an hour earlier.  *Ibid*.  Cooper also stated that a reddish colored Buick had been involved in the Harvey shooting.  *Id*. at 25.  At this point, Marovich arrested Judkins.  *Id*. at 25, 39.

Marovich further testified that in his fifteen years as a police officer he had handled numerous auto theft and homicide investigations.  *Id*. at 25.  He explained that auto thefts have certain typical characteristics, including the involvement of two vehicles—the vehicle being stolen and the vehicle that transported the thieves.  *Ibid*.  The location to which Marovich had been called was approximately three or four miles from Harvey.  *Id*. at 26.  Following his arrest, Judkins was taken to the Harvey police department where witnesses identified him from lineups as a perpetrator in the killings of Ford and Mays.  Doc. 21-1 at 8-79.

Judkins's counsel questioned Marovich at the suppression hearing.  Doc. 21-12 at 3-10, 27-35, 41-47.  The trial court heard oral argument from both sides before issuing a ruling.  *Id*. at 47-61.  In denying the motion to suppress, the trial court held that, based on the totality of the information available to the officers, there were adequate grounds to arrest Judkins.  *Id*. at 61-62. The court therefore denied Judkins's motion to suppress.  *Id*. at 62.  As noted above, Judkins did not challenge this ruling in either of his direct appeals.

**Discussion**

I.    **Case No. 4453**

There is no need to reach the merits of Judkins's habeas claims regarding the convictions

entered in Case No. 4453 if the petition is untimely as to those claims.  The habeas statute

provides, in relevant part, that a "1-year period of limitation shall apply to an application for a

writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The

limitation period shall run from … the date on which the judgment became final by the

conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C.

§ 2244(d)(1)(A).  The Seventh Circuit has not decided whether § 2244(d)(1)(A) establishes a

single statute of limitations that applies to a habeas petition as a whole or, by contrast, whether

individual claims in a petition must be evaluated for timeliness on a claim-by-claim basis.  If a

single statute of limitations applies to a habeas petition as a whole, then the entirety of Judkins's

petition is timely because, as the Warden correctly concedes, the habeas claims directed towards

the conviction in Case No. 4451 are timely.  If, however, timeliness must be evaluated on a

claim-by-claim basis, then, as shown below, the habeas claims directed towards the convictions

in Case No. 4453 are untimely.

The circuits to have considered the question are unanimous in holding that timeliness

must be evaluated on a claim-by-claim basis.  *See Zack v. Tucker*, 704 F.3d 917, 918 (11th Cir.

2013) (en banc), *overruling Walker v. Crosby*, 341 F.3d 1240, 1245 (11th Cir. 2003);

*Prendergast v. Clements*, 699 F.3d 1182, 1187 (10th Cir. 2012); *Mardesich v. Cate*, 668 F.3d

1164, 1169-71 (9th Cir. 2012); *Bachman v. Bagley*, 487 F.3d 979, 983-84 (6th Cir. 2007);

*Fielder v. Varner*, 379 F.3d 113, 122 (3d Cir. 2004) (Alito, J.).  In *Ramos v. Trancoso*, 2010 WL

3025013 (N.D. Ill. Aug. 2, 2010), Judge Dow relied on *Fielder* in concluding that a "claim-by-claim" approach applies to § 2244 claims:

> In *Fielder*, the Third Circuit reasoned that, when § 2244(d)(1)(D) is implicated, the statute of limitations must be applied individually to each claim in a habeas petition. The *Fielder* court cited two reasons for its holding: first, "this is the way that statutes of limitations are generally applied," and there is no basis for concluding that "Congress intended to make a radical departure from this approach in § 2244(d)(1)." *Fielder*, 379 F.3d at 118. Second, adopting a whole-application approach would lead to results the court was "confident Congress did not want to produce," such as "permitting a late-accruing federal habeas claim to open the door for the assertion of other claims that had become time-barred years earlier." *Id*. at 120. Other federal courts have been persuaded by *Fielder*'s analysis and have adopted a claim-by-claim approach. *See Bachman*, 487 F.3d at 984 (finding *Fielder*'s analysis persuasive and more consistent with Sixth Circuit precedent than *Walker*'s); *Price-Mahdi v. Subia*, 2009 WL 331444, at *2 (N.D. Cal. Feb. 11, 2009) ("This court finds the reasoning in *Fielder* to be most persuasive and follows it."); *Nusbaum v. Salazar*, 2008 WL 5377996, at *10 (C.D. Cal. Dec. 22, 2008) ("The Court finds the *Fielder* approach the better one."); *Ellis v. Quarterman*, 2008 WL 2963467, at *7 (S.D. Tex. July 30, 2008) (adopting *Fielder*'s approach); *Jackson v. Hofbauer*, 2007 WL 391405, at *7 (E.D. Mich. Jan. 31, 2007) (finding the *Fielder* approach to be the "better reasoned" one).

*Id*. at *3. Judge Dow's reasoning is persuasive, and so the court holds that the limitations analysis under § 2244(d)(1)(A) must proceed on a claim-by-claim basis.

Judkins did not file a PLA with the Supreme Court of Illinois on direct review of his conviction in Case No. 4453, so that judgment became final when the time for seeking leave to appeal expired. *See Gonzalez v. Thaler*, 132 S. Ct. 641, 653-54 (2012) ("because [petitioner] did not appeal to the State's highest court, his judgment became final [under § 2244(d)(1)(A)] when his time for seeking review with the State's highest court expired"); *Fields v. Wharrie*, 672 F.3d 505, 515 (7th Cir. 2012) (same). The state appellate court affirmed Judkins's conviction on July 26, 1996. At the time, Illinois law gave Judkins 21 days to file a PLA or an affidavit of intent to

file a PLA. *See* Ill. Sup. Ct. R. 315(b) (1996). Judkins did neither, and thus the one-year

limitations period under § 2244(d)(1) commenced 21 days later, on August 16, 1996. *See*

*Johnson v. Hobbs*, 678 F.3d 607, 610 (8th Cir. 2012) ("Johnson did not pursue his direct appeal

to the Arkansas Supreme Court, and thus his conviction became final on April 7, 2009, when he

could no longer seek review from that court."); *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d

452, 460 (6th Cir. 2012) ("Because Keeling did not seek further review of the [Ohio Court of

Appeals] decision within the forty-five day period [allowed to seek review with the Ohio

Supreme Court], the Court of Appeals judgment became final on August 12, 2002. Thus, the

statute of limitations began to run on these grounds on August 13, 2002."); *Sims v. Hardy*, 2012

WL 4932609, at *1 (N.D. Ill. Oct. 16, 2012).

     The running of the limitations period stopped 159 days later, on January 23, 1997, when

Judkins filed a state post-conviction petition in Case No. 4453. *See* 28 U.S.C. § 2244(d)(2)

("The time during which a properly filed application for State post-conviction or other collateral

review with respect to the pertinent judgment or claim is pending shall not be counted toward

any period of limitation under this subsection."). Because Judkins did not petition the state

supreme court for leave to appeal, the clock started to run again on November 7, 1997, 21 days

after the state appellate court affirmed the dismissal of Judkins's post-conviction petition on

October 17, 1997.

     When the clock resumed running on November 7, 1997, Judkins had 206 days—until

May 31, 1998—to file a federal habeas petition seeking to challenge the convictions in Case No.

4453. But Judkins did not file his habeas petition until May 25, 2012, nearly fourteen years later.

Doc. 1. Judkins did file a successive state post-conviction petition on September 24, 2003. But

state collateral proceedings not filed until after the one-year limitations period has expired do not re-set the federal clock for purposes of § 2244(d)(2). *See De Jesus v. Acevedo*, 567 F.3d 941, 943 (7th Cir. 2009) ("Subsection (2)'s approach to excluding time is straightforward. It follows that a state proceeding that does not begin until the federal year is expired is irrelevant."). The successive post-conviction petition therefore does not save from the statute of limitations Judkins's claims as to Case No. 4453.

Judkins contends that those claims are timely under 28 U.S.C. § 2244(d)(1)(C). Doc. 23 at 8-16. Section 2244(d)(1)(C) states that when a petition is brought on the basis of a newly recognized constitutional right, the limitations period runs from "the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." Section 2244(d)(1)(C) does not apply here. The constitutional right that Judkins deems to be "newly recognized" comes from *Brendlin v. California*, 551 U.S. 249 (2007), which held that "a traffic stop subjects a passenger, as well as the driver, to Fourth Amendment seizure." *Id.* at 254. *Brendlin*, however, expressly acknowledges that it did not announce a new constitutional right. *See id.* at 255 ("[W]e have [previously] said over and over … that during a traffic stop an officer seizes everyone in the vehicle, not just the driver."). Moreover, the Supreme Court has never held that *Brendlin* is retroactive on collateral review, as required for § 2244(d)(1)(C) to apply. *See Tyler v. Cain*, 533 U.S. 656, 662-63 (2001) (interpreting materially identical language in § 2244(b)(2)(A)); *Pettijohn v. Bartos*, 248 F. App'x 845, 846 (9th Cir. 2007). Accordingly, § 2244(d)(1)(C) does not save from the limitations bar Judkins's claims as to Case No. 4453. *See Smith v. City of Oakland*, 2011 WL 3360451, at *25 (N.D. Cal. Aug. 4, 2011); *United States*

*v. Kirksey*, 2007 WL 2225879, at *1 n.7 (E.D. Mich. Aug. 2, 2007) ("Petitioner's motion rests

upon the authority of *Brendlin v. California*. That case, however, did not announce a new rule of

constitutional law.") (internal quotation marks omitted).

Finally, equitable tolling is unavailable here. The Supreme Court has held that a habeas

petitioner is entitled to equitable tolling only upon a showing "(1) that he has been pursuing his

rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented

timely filing." *Holland v. Florida*, 130 S. Ct. 2549, 2562 (2010) (internal quotation marks

omitted). As the Seventh Circuit put it, equitable tolling "is granted sparingly only when

extraordinary circumstances far beyond the litigant's control prevented timely filing." *Simms v.

Acevedo*, 595 F.3d 774, 781 (7th Cir. 2010) (internal quotation marks omitted). The

circumstances of this case—where Judkins did not file his successive post-conviction petition

until several years after his conviction had become final on direct review, and did not file his

federal habeas petition until nearly fourteen years after the statutory limitations period had

expired—do not warrant equitable tolling under the strict standard established by the Supreme

Court. *See Pace v. DiGuglielmo*, 544 U.S. 408, 418-19 (2005); *Simms*, 595 F.3d at 781; *Janssen

v. Pugh*, 394 F. App'x 305, 306 (7th Cir. 2010).

## II.     Case No. 4451

There being no limitations or other bar to the habeas claims directed towards Judkins's

conviction in Case No. 4451, the court will address the merits of those claims in turn.

### A.     Fourth Amendment Claims

Judkins's petition raises three separate Fourth Amendment claims: (1) that the traffic stop

was not justified by reasonable suspicion; (2) that his arrest following the traffic stop was not

justified by probable cause; and (3) that the Calumet Park Police Department lacked the authority

to transfer Judkins to the custody of the Harvey Police Department.  Doc. 1 at 3, 8; Doc. 15 at 9-

10.  Those claims are not cognizable on federal habeas review.

The Supreme Court has held that "where the State has provided an opportunity for full

and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal

habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure

was introduced at his trial."  *Stone v. Powell*, 428 U.S. 465, 494 (1976).  The Seventh Circuit has

explained that "a 'full and fair opportunity' guarantees only 'the right to present one's case.'"

*Watson v. Hulick*, 481 F.3d 537, 542 (7th Cir. 2007) (quoting *Cabrera v. Hinsley*, 324 F.3d 527,

531-32 (7th Cir. 2003)).  Put another way, a "full and fair" hearing occurs when the defendant is

allowed to present his case in a proceeding that is not a "sham."  *Cabrera*, 324 F.3d at 531-32;

*see also Miranda v. Leibach*, 394 F.3d 984, 997 (7th Cir. 2005) ("a [Fourth Amendment]

blunder, no matter how obvious, matters only in conjunction with other circumstances that imply

refusal by the state judiciary to take seriously its obligation to adjudicate claims under the fourth

amendment") (internal quotation marks omitted).

Judkins did have the opportunity to present his Fourth Amendment claims to the state

courts, and the state court proceedings were not a sham.  As noted above, the trial court held a

hearing on Judkins's motion to suppress.  Officer Marovich testified at the hearing and was

subject to cross-examination, and Judkins's counsel presented argument.  After receiving the

evidence and argument, the trial court ruled that the arrest was supported by probable cause.

Although the court's oral ruling did not cite any case law, its conclusion—"You take all of that

information and put it together, it provides a basis to take [Judkins] into custody," Doc. 21-12 at

-13-

61—shows that it appropriately considered whether there was probable cause for the arrest. That is all that was required of the state court. *See Miranda*, 394 F.3d at 999 (holding that under *Stone* a federal court may consider a Fourth Amendment habeas claim on the merits only if there is evidence that the state court "closed its ears and mind to argument") (alterations omitted); *Cabrera*, 324 F.3d at 531 (holding that a federal habeas court faced with a *Stone* issue should not "examine whether the [state] judge seemed to have done some quality preparation for the hearing or had a perfect understanding of the fine points of search and seizure law"). Because the state court satisfied the "full and fair opportunity" standard, *Stone* precludes this court from considering the merits of Judkins's Fourth Amendment claims. *See Serio v. Pfister*, 2013 WL 593824, at *3 (N.D. Ill. Feb. 14, 2013).

Judkins did not raise his Fourth Amendment claims on direct appeal, and so the state appellate court did not address that claim. That does not constitute a denial of a full and fair and fair opportunity to litigate the Fourth Amendment claims; Judkins's forfeiture of his Fourth Amendment claims does not relieve him from the *Stone* bar. *See Bostick v. Peters*, 3 F.3d 1023, 1027 (7th Cir. 1993) ("the petitioner is not denied an opportunity for full and fair litigation of his claim if he fails to raise and preserve the claim in state court"); *Maxey v. Morris*, 591 F.2d 386, 388 (7th Cir. 1979) (same).

### B.    Ineffective Assistance of Counsel Claim

Judkins's sole cognizable and timely habeas claim is that his appellate counsel in Case No. 4451 was ineffective for failing to challenge on direct appeal the trial court's denial of his motion to suppress. The parties agree that Judkins properly exhausted his state court remedies regarding that claim, that the state appellate court adjudicated that claim on the merits, and that

28 U.S.C. § 2254(d) applies to the petition. Doc. 20 at 11, 14. To prevail on his claim, Judkins "must demonstrate that he 'is in custody in violation of the Constitution or laws or treaties of the United States.'" *Brown v. Watters,* 599 F.3d 602, 611 (7th Cir. 2010) (quoting 28 U.S.C. § 2254(a)). "Federal habeas relief may not be granted for claims subject to § 2254(d) unless it is shown that the earlier state court's decision 'was contrary to' federal law then clearly established in the holdings of [the Supreme] Court, § 2254(d)(1); or that it 'involved an unreasonable application of' such law, § 2254(d)(1); or that it 'was based on an unreasonable determination of the facts' in light of the record before the state court, § 2254(d)(2)." *Harrington v. Richter*, 131 S. Ct. 770, 785 (2011) (one citation omitted). Although Judkins's petition does not specify which of these grounds he invokes, his *pro se* petition will be broadly construed and each ground will be considered in turn.

A state court's decision is "contrary to" clearly established federal law "if the state court applies a rule different from the governing law set forth in [Supreme Court] cases, or if it decides a case differently than [the Supreme Court did] on a set of materially indistinguishable facts." *Bell v. Cone,* 535 U.S. 685, 694 (2002); *see also Brown v. Finnan,* 598 F.3d 416, 421-22 (7th Cir. 2010). For Judkins to have prevailed in state court on his ineffective assistance claim, he had to show that (1) his attorney's performance was deficient and (2) prejudice resulted therefrom. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Here, the state appellate court correctly identified *Strickland* as the appropriate constitutional standard. Doc. 21-23 at 134-139. Given this, it cannot be said that the court applied a rule different from the rule established by the Supreme Court. *See Garth v. David*, 470 F.3d 702, 710 (7th Cir. 2006) (a "decision applying the correct legal rule to the facts of a case is not 'contrary to' within the

meaning of § 2254(d)(1)").  And there is no Supreme Court case that resolved an ineffective assistance claim premised on materially identical facts differently than did the state appellate court here.

For purposes of § 2254(d)(1), "an *unreasonable* application of federal law is different from an *incorrect* application of federal law."  *Richter*, 131 S. Ct. at 785 (internal quotation marks omitted).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision."  *Id*. at 786 (internal quotation marks omitted).  Put another way, to obtain relief under the "unreasonable application" prong of § 2254(d)(1), "a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  *Id*. at 786-87.

The state appellate court's application of *Strickland* to Judkins's ineffective assistance claim was not unreasonable.  An appellate attorney is not required to raise every non-frivolous issue on appeal.  *See Martin v. Evans*, 384 F.3d 848, 852 (7th Cir. 2004); *Mason v. Hanks*, 97 F.3d 887, 893 (7th Cir. 1996).  "One of the principal functions of appellate counsel is winnowing the potential claims so that the court may focus on those with the best prospects."  *Page v. United States*, 884 F.2d 300, 302 (7th Cir. 1989); *see also United States v. Davenport*, 986 F.2d 1047, 1049 (7th Cir. 1993) (holding that appellate attorneys "are entitled to be selective") (citing *Jones v. Barnes*, 463 U.S. 745 (1983)).  "[C]ounsel's strateg[ic] decisions—including the decision not to pursue a plethora of issues on appeal—ordinarily do not violate the Sixth Amendment's guarantee of effective assistance."  *Bond v. United States*, 1 F.3d 631, 635 n.2 (7th Cir. 1993).

-16-

An appellate attorney's performance is deficient only if the attorney fails to raise a "significant and obvious issue" without a legitimate reason for doing so. *Howard v. Gramley*, 225 F.3d 784, 790 (7th Cir. 2000); *see also Mason*, 97 F.3d at 893 (same); *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986) (same).

Here, after identifying the applicable constitutional standard, the state appellate court observed that "it is not incompetence of counsel to refrain from raising issues, which in counsel's judgment, are without merit." Doc. 21-23 at 134-35. The appellate court then considered Judkins's claims that Officer Marovich lacked reasonable suspicion to make the initial traffic stop and that he lacked probable cause to arrest Judkins. Based upon its review of the record, the appellate court reasonably determined that "Officer Marovich's testimony established that he had specific and articulable facts" that justified a traffic stop under *Terry v. Ohio*, 392 U.S. 1, 21-22 (1968). Doc. 21-23 at 136; *see United States v. Johnson*, 680 F.3d 966, 974 (7th Cir. 2012) ("A typical traffic stop is analogous to a *Terry* stop, and during these stops an officer is permitted to ask questions to determine an individual's identity and to obtain information confirming an officer's suspicions."); *United States v. Snow*, 656 F.3d 498, 502-03 (7th Cir. 2011) (holding that a *Terry* stop was proper where the defendant and his vehicle matched the general description of the suspect in a nearby attempted burglary); *United States v. Childs*, 277 F.3d 947, 952 (7th Cir. 2002) (en banc) (*Terry* allows for traffic stops if there is reasonable suspicion). The appellate court next addressed Judkins's assertion that Marovich lacked probable cause to arrest him. After reviewing the record, the court reasonably concluded that Marovich had probable cause to make the arrest. Doc. 21-23 at 137-39; *see United States v. McCauley*, 659 F.3d 645, 649 (7th Cir. 2011) (finding probable cause to arrest defendant when he met the general description of the

suspect and was at the location of the reported crime). Then, based on the conclusion that Judkins's underlying Fourth Amendment claim was meritless, the appellate court reasonably rejected his claim that his appellate counsel on direct appeal was not ineffective for not challenging the trial court's denial of his motion to suppress. Doc. 21-23 at 139; *see Schaff v. Snyder*, 190 F.3d 513, 527 (7th Cir. 1999) (holding that appellate counsel was not ineffective for failing to raise a "weak" claim on direct appeal); *Stone v. Farley*, 86 F.3d 712, 717 (7th Cir. 1996) ("Failure to raise a losing argument, whether at trial or on appeal, does not constitute ineffective assistance of counsel."). Given all this, the state appellate court's rejection of Judkins's ineffective assistance claim was eminently reasonable, rendering habeas relief inappropriate.

## Conclusion

Because all of Judkins's claims are time-barred, non-cognizable, or without merit, his petition for a writ of habeas corpus is denied. Rule 11(a) of the Rules Governing Section 2254 Cases provides that the district court "must issue or deny a certificate of appealability [('COA')] when it enters a final order adverse to the applicant." *See Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011). The applicable standard is as follows:

> To obtain a COA under § 2253(c), a habeas petitioner must make a substantial showing of the denial of a constitutional right, a demonstration that … includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.

*Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (internal quotation marks omitted); *see Lavin*, 641 F.3d at 832; *Davis v. Borgen*, 349 F.3d 1027, 1029 (7th Cir. 2003).

The court denies a certificate of appealability. When a habeas claim is dismissed as untimely, a certificate of appealability should issue only if reasonable jurists would find the petition's timeliness "debatable." *Slack*, 529 U.S. at 484. Because the untimeliness of Judkins's claims as to Case No. 4453 is not debatable, a certificate of appealability is denied as to those claims. *See ibid.* ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further. In such a circumstance, no appeal would be warranted."). Regarding the Fourth Amendment claims as to Case No. 4451, the conclusion that Judkins had a full and fair opportunity to litigate those claims is not debatable. Nor could reasonable jurists debate the proposition that the state appellate court's denial of Judkins's ineffective assistance of counsel claim was not contrary to or an unreasonable application of *Strickland*.

May 17, 2013

_____
United States District Judge